**Nos. 2023-1925, –1926, –1928, –1929, –1979, –2010, –2011, –2012**

# United States Court of Appeals
# for the Federal Circuit

**Nos. 23-1925, 23-1926, 23-1928, 23-1929, 23-1979**

STRYKER CORPORATION, WRIGHT MEDICAL TECHNOLOGY, INC.,
*Appellants*

v.

OSTEOMED LLC,
*Cross-Appellant*

———————————

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2021-01450, IPR2021-01451, IPR2021-01452, and IPR2021-01453

**Nos. 2023-2010, 2023-2011, 2023-2012**

STRYKER CORPORATION, WRIGHT MEDICAL TECHNOLOGY, INC.,
*Appellants*

v.

OSTEOMED LLC,
*Appellee*

———————————

Appeals from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2022-00189, IPR2022-00190, and IPR2022-00191

## CROSS-APPELLANT'S REPLY BRIEF

Jason A. Engel
Devon C. Beane
Jonah Heemstra
K&L GATES LLP
70 W. Madison Street, Suite 3300
Chicago, IL 60602
(312) 807-4436
devon.beane@klgates.com

*Attorneys for Cross-Appellant*

May 24, 2024

## <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ............................................................. i

INTRODUCTION ................................................................1

ARGUMENT ......................................................................2

I.    The '085 Patent Describes Numerous Embodiments and Claims One of
      Them ................................................................................2

II.   The Board Legally Erred in Concluding Claim 1 of the '085 Patent Could
      Cover a Transfixation Screw Hole Adjacent the Bridge Portion ...................8

III.  Slater Does Not Disclose a Transfixation Screw Hole "at the Thickened
      Portion of the Bridge Portion".....................................................10

CONCLUSION ..................................................................15

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                     **Page(s)**

*Apple Inc. v. Samsung Elecs. Co.*,
  839 F.3d 1034 (Fed. Cir. 2016)..........................................................................13

*August Tech. Corp. v. Camtek, Ltd.*,
  655 F.3d 1278 (Fed. Cir. 2011)........................................................................6, 7

*Baran v. Med. Device Techs., Inc.*,
  616 F.3d 1309 (Fed. Cir. 2010)............................................................................6

*Becton, Dickinson & Co. v. Tyco Healthcare Grp.*,
616 F.3d 1249 (Fed. Cir. 2010).............................................................................9

*Capital Mach. Co. v. Miller Veneers, Inc.*,
  524 F. App'x 644 (Fed. Cir. 2013) .......................................................................5

*E.I. du Pont de Nemours & Co. v. Unifrax I LLC*,
  921 F.3d 1060 (Fed. Cir. 2019).............................................................................5

*EcoNova, Inc. v. DPS Utah*,
  No. 1:12-CV-174, 2013 WL 65460 (D. Utah Jan. 4, 2013) .......................... 9, 10

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
  527 F.3d 1379 (Fed. Cir. 2008).............................................................................6

*In re Chudik*,
  851 F.3d 1365 (Fed. Cir. 2017)...........................................................................12

*In re Smith Int'l, Inc.*,
  871 F.3d 1375 (Fed. Cir. 2017)...........................................................................15

*Intamin Ltd. v. Magnetar Techs.*,
  483 F.3d 1328 (Fed. Cir. 2007.............................................................................6

*Kara Tech. Inc. v. Stamps.com Inc.*,
  582 F.3d 1341 (Fed. Cir. 2009).........................................................................7, 8

*Medrad, Inc. v. MRI Devices Corp.*,
401 F.3d 1313 (Fed. Cir. 2005)....................................................................9

*NorthMobileTech LLC v. Simon Prop. Grp., Inc.*,
No. 3:11-CV-287, 2012 WL 1035380 (W.D. Wis. Mar. 27, 2012) .............. 9, 10

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005)...................................................................10

*PSN Ill., LLC v. Ivoclar Vivadent, Inc.*,
525 F.3d 1159 (Fed. Cir. 2008)....................................................................7

*Therasense, Inc. v. Becton, Dickinson & Co.*,
593 F.3d 1325 (Fed. Cir. 2010)................................................................ 13, 14

## INTRODUCTION

The crux of Appellants' argument regarding the Cross-Appeal Claims is its erroneous contention that the "bridge portion" claimed in claims 1-7 of the '085 Patent is ***defined*** as lacking holes. ECF No. 39 at 49-50 ("the bridge portion is defined in the specification as being free of voids or holes"); *see also id.* at 45 ("If the bridge portion can contain holes (contrary to the definition set forth in the '085 patent) . . ."). But the '085 Patent contains no such definition, nor did Appellants seek a construction from the Board below that would so limit the term "bridge portion." Instead, the '085 Patent explains, "[s]ince bridge portion 130 is configured to span across joint 106, ***it is typically*** defined by an unbroken section of spine 124 that is free of voids such as positioning holes or screw holes that could potentially reduce the bending strength of bridge portion 130." Appx460, 8:33-37 (emphasis added).

The specification nowhere suggests that the bridge portion ***cannot*** contain holes or defines the bridge portion in the manner Appellants suggest. In the very next sentence, in fact, the specification offers an alternative configuration to increase the bending strength of the bridge portion 130: "Depending upon design, ***bridge portion 130 may include a thickened section 136*** of bone plate 100 to increase the bending strength of the bridge portion 130." Appx460, 8:37-39 (emphasis added). The specification goes on to explain that the thickened section 136 may include the

1

transfixation screw hole 102. Appx461, 9:6-8. This is exactly what is claimed in the '085 Patent: "an aperture defining a transfixation screw hole disposed along the spine *at* the thickened portion *of* the bridge portion." Appx462, cl. 1 (emphasis added). There is no plain meaning of these words that reasonably encompasses a transfixation screw hole adjacent to the bridge portion, much less adjacent to the thickened portion of the bridge portion. The Board's decision regarding the Cross-Appeal Claims should be reversed.

## **ARGUMENT**

### I.   THE '085 PATENT DESCRIBES NUMEROUS EMBODIMENTS AND CLAIMS ONE OF THEM

Appellants erroneously contend the '085 Patent discloses a single embodiment, and it would be improper to construe the claims of the '085 Patent in a manner that would exclude this purportedly "preferred" embodiment that "describes the transfixation screw hole as being positioned 'adjacent the bridge portion.'" ECF No. 39 at 47 (quoting Appx460-461, 8:61-9:9). The '085 Patent does not describe a single, preferred embodiment. Instead, it describes a general plate (Appx457, 1:40-42 ("[T]he present disclosure relates to a bone plate with a transfixation screw hole for securing the bones of a joint together.")) and provides a menu of options as to how to implement the functionality for different use cases. This is apparent in the specification's repeated use of, for example, "particular embodiments," "[d]epending upon design," "[a]s another example," and "an

example embodiment." *See generally* Appx451-463. Even Appellants appear to acknowledge the '085 Patent describes more than one embodiment as they describe Figure 4 as "a different bone plate than the MTP plate shown in Figures 2-3." ECF No. 39 at 48 n.4.

One of these described embodiments relates to thickening the bridge portion of the plate to enhance its bending strength. Appx460, 8:37-39. Because this achieves the same goal as eliminating holes from the bridge portion (that is, to increase the bending strength of the plate), it makes sense that this disclosure describes an alternative embodiment to what Appellants refer to as the "preferred (and only) disclosed embodiment." ECF No. 39 at 47. The figures show this thickened bridge portion embodiment as including the transfixation screw hole:



Appx456, Fig. 4 (annotated). This illustrated embodiment is what is claimed in the '085 Patent as is clear from the plain language of claim 1: "an aperture defining a transfixation screw hole disposed along the spine **at** the thickened portion **of** the bridge portion." Appx462, cl. 1 (emphasis added).

The '608 Patent, which is the great-grandparent of the '085 Patent, similarly claims "a transfixation screw hole disposed along the spine, . . . [configured] such that the transfixation screw extends **through** the bridge portion . . . ." Appx420, 12:14-22, Appx422; *see also* Appx456, 1:7-18. A transfixation screw hole that directs a screw **through** the bridge portion must itself be on the bridge portion and not adjacent to the bridge portion. At the very least, this expressly claimed hole

arrangement undermines the "dispositive issue" at the heart of the Appellants' response because the bridge portion can include (and indeed is expressly claimed to include) holes. ECF No. 39 at 44. Put differently, in contrast to Appellants' contention, the bridge portion cannot be "free of voids" if the screw is to extend through the bridge portion. *Id.* at 46, 49-50, 52-53. There must be a void for the screw to extend through.

The language of claim 1 of the '085 Patent clarifying that the transfixation screw hole is "at the thickened portion of the bridge portion" likewise confirms that the applicant considered and expressly claimed a hole located on the bridge portion and not adjacent to the bridge portion. *See E.I. du Pont de Nemours & Co. v. Unifrax I LLC*, 921 F.3d 1060, 1070 (Fed. Cir. 2019) ("When a parent application includes statements involving 'common subject matter' with the terms at issue, those statements are relevant to construction of the terms in the child patent."); *see also Capital Mach. Co. v. Miller Veneers, Inc.*, 524 F. App'x 644, 647 (Fed. Cir. 2013) ("When construing claim in patents that derive from the same parent application and share common terms, we must interpret the claims consistently across all asserted patents." (internal quotation omitted)).

Even if the '085 Patent did disclose a preferred embodiment where the bridge portion is "free of voids," this Court has acknowledged that "a claim need not cover all embodiments." *Intamin Ltd. v. Magnetar Techs.*, 483 F.3d 1328, 1337 (Fed. Cir.

2007); *see also, e.g.*, *Baran v. Med. Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) ("It is not necessary that each claim read on every embodiment."); *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("It is often the case that different claims are directed to and cover different disclosed embodiments.").

"The fact that the claims at issue cover only the latter . . . is little cause for concern. 'The mere fact that there is an alternative embodiment disclosed in the [asserted patent] that is not encompassed by [our] claim construction does not outweigh the language of the claim, especially when the court's construction is supported by the intrinsic evidence.'" *August Tech. Corp. v. Camtek, Ltd.*, 655 F.3d 1278, 1285 (Fed. Cir. 2011) (brackets in original) (quoting *TIP Sys., LLC v. Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008)). The intrinsic record here (the claims, the specification language, and notably the figures) fully support Cross-Appellant's understanding. As detailed above, the plain language of the '085 Patent cannot cover what Appellants identify as the "preferred" embodiment because the claim requires a thickened portion *of* the bridge portion (i.e., that a portion of the bridge itself is thickened). Appx462, cl. 1. The claim then requires that the transfixation screw hole be *at* that thickened portion that is a portion of the bridge itself. There is no other plausible read of claim 1 that comports with plain English.

Moreover, as this Court explained in *August Technology*, excluding embodiments from the scope of a claim is even less problematic when other claims cover the excluded embodiments. *August Tech.*, 655 F.3d at 1285; *see also PSN Ill., LLC v. Ivoclar Vivadent, Inc.*, 525 F.3d 1159, 1166 (Fed. Cir. 2008) ("[C]ourts must recognize that disclosed embodiments may be within the scope of other allowed but unasserted claims."). Independent claims of the related '776 and '716 Patents each broadly recite a transfixation screw hole that is "disposed along the spine." Appx435, 12:19-27; Appx448, 12:47-55. Claim 1 of the '085 Patent also recites a transfixation screw hole "disposed along the spine," but further narrows the location of the screw hole to the location along the spine that is "at the thickened portion of the bridge portion." Appx462, 12:45-47. The difference in language between the '716 and '776 Patents and the '085 Patent confirms that "when the inventor wanted to restrict the claims . . ., he did so explicitly." *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347 (Fed. Cir. 2009).

Despite acknowledging that the claims in the '776 and '716 Patents contain different language, Appellants all but confirm they failed to contemplate the implication of the differences between the claims. ECF No. 39 at 53 ("But the claims of the related patents shed no light on the dispute here"). The specificity present in claim 1 of the '085 Patent, particularly when compared to the comparable language in the '776 and '716 Patents, provides solid contextual evidence that the inventor

wanted to restrict the claim to the specific location along the spine (i.e., the thickened

portion of the bridge portion). *Kara Tech.*, 582 F.3d at 1347.

## II.    THE BOARD LEGALLY ERRED IN CONCLUDING CLAIM 1 OF THE '085 PATENT COULD COVER A TRANSFIXATION SCREW HOLE ADJACENT THE BRIDGE PORTION

Appellants' brief continues to compound the Board's error below in arguing

"at" can mean "adjacent the bridge portion" without contemplating whether such an

interpretation comports with the actual claim language, arguing the Board's

references to "at the bridge portion" are just "shorthand" and claiming Cross-

Appellant's reliance on the Board's misstatement of the claim language is just

"semantic." ECF No. 39 at 48. The Board's construction, however, reads out, or at

least renders superfluous, the language in the claim clarifying that the transfixation

screw hole is located "***at the thickened portion*** of the bridge portion," i.e., at a

specific portion of the bridge portion, as detailed above. Appx462, 12:45-47

(emphasis added). Because the Board and Appellants improperly view the limitation

as "at the bridge portion," both wrongly assume "adjacent" the bridge portion is

encompassed by the plain language of the claim.

Appellants also do not appear to refute that "at" and "adjacent" have different meanings, a proposition Appellants' own patents expressly confirm.[1] ECF No. 39 at 54 (acknowledging "at or adjacent" has a "full[er], broad[er] meaning" than "at" by itself); ECF No. 34 at 49. Instead, Appellants rely on unpublished district court decisions where "at" was construed broadly to mean "close to" or "near." ECF No. 39 at 50-51 n.6 (citing *NorthMobileTech LLC v. Simon Prop. Grp., Inc.*, No. 3:11-CV-287, 2012 WL 1035380, at *2 (W.D. Wis. Mar. 27, 2012); and *EcoNova, Inc. v. DPS Utah*, No. 1:12-CV-174, 2013 WL 65460, at *14 (D. Utah Jan. 4, 2013)). Those cases, however, provide no basis in the intrinsic record *of the '085 Patent* to sidestep the well-established rule that claims "must be 'interpreted with an eye toward giving effect to all terms in the claim.'" *Becton, Dickinson & Co. v. Tyco Healthcare Grp.*, 616 F.3d 1249, 1257 (Fed. Cir. 2010) (quoting *Bicon, Inc. v. Straumann Co.*, 411 F.3d 945, 950 (Fed. Cir. 2006)). Moreover, the claim term at issue in *EcoNova*, "at

---

[1]  Appellants argue their bone plate patents are "irrelevant to the construction here," yet rely on district court opinions regarding terms used in patenting water treatment devices and shopping malls. ECF No. 39 at 50-51 n.6; *see also id.* at 54. At a minimum, Appellants' patents directed to the same technology provide more indication than these unrelated technologies regarding how a skilled artisan would have understood the term "at" in the context of bone plates. *Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1318 (Fed. Cir. 2005) (citing *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1332 (Fed. Cir. 2001)) ("claim terms are typically given their ordinary and accustomed meaning as understood by one of ordinary skill in the pertinent art, and the generally understood meaning of particular terms may vary from art to art.").

or adjacent," mirrors the language of Appellants' patents as opposed to the more narrowly claimed "at" recited in the '085 Patent. *EcoNova*, 2013 WL 65460 at *14.

In *NorthMobileTech*, the parties agreed the claim term "determining that said mobile wireless communications device is located at a given shopping facility" included devices in "the general vicinity of the mall, such as in the parking lot." *NorthMobileTech*, 2012 WL 1035380, at *2 n.1. Here, by contrast, the parties do not agree "at the thickened portion of the bridge portion" can encompass a hole adjacent to the bridge portion as the Board concluded. Indeed, if the term at issue in *NorthMobileTech* were "located at the food court of a given shopping facility," rather than just "at a given shopping facility," no reasonable view of that term could encompass a device in the shopping facility parking lot.

In this case, the "ordinary and customary" meaning of a hole "at the thickened portion of the bridge portion" does not encompass a hole "adjacent to the bridge portion," much less a hole adjacent to the thickened portion of the bridge portion. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005).

## III.   SLATER DOES NOT DISCLOSE A TRANSFIXATION SCREW HOLE "AT THE THICKENED PORTION OF THE BRIDGE PORTION"

Appellants seemingly concede Slater fails to disclose a transfixation screw hole *at* the thickened portion *of* the bridge portion because it contends Slater's hole is actually part of a different thickened portion of the plate "adjacent the void-less,

thickened bridge portion." ECF No. 39 at 49. During the proceedings below, when Cross-Appellant argued Appellants' identified bridge portion did not include a transfixation screw hole, Appellants opted to provide new annotated figures on reply that expanded the bridge portion to encompass the transfixation screw hole without any reference to ***the thickened portion*** of the bridge portion. *Compare* Appx7531 *with* Appx8085 ("The bridge portion would simply be expanded to include Slater's transfixation screw hole."). For example, Appellants' newly annotated Figure 1 of Slater in reply does not identify a thickened portion of the Slater plate at all:



Appx8085 (annotated in original). The Board acknowledged this argument and compounded the error in overlooking the specificity demanded in the "thickened portion" language of the claim. Appx207 (finding Slater would anticipate "if one defines Slater's bridge portion as encompassing the transfixation screw hole by expanding the area to include the hole," irrespective of whether the hole was located at the thickened portion of the bridge portion).

11

The **only** evidence of record regarding a "thickened portion" of Slater was provided in Appellants' Petition, which identifies the area around the bend in the plate:



Appx7530; *see generally* Appx8074-8087. This identification comports with Slater's explanation that the plate would be thickened across the bend in order to maintain plate integrity. *See* Appx2499, 8:32-34.

Despite redrawing its identification of Slater's bridge portion on reply to encompass the transfixation screw hole, Appellants chose not to expand, or otherwise redefine, what it identified as the thickened portion of the bridge portion. Appx8085; Appx9119-9120, ¶ 27. Even accounting for an expanded bridge portion, Slater's transfixation screw hole that is indisputably **not** on the thickened bend, fails to anticipate the claimed "transfixation screw hole . . . at the thickened portion of the bridge portion." *In re Chudik*, 851 F.3d 1365, 1372 (Fed. Cir. 2017) (quoting *Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1345 (Fed. Cir. 2008)). Thus, the only evidence

of record for the location of the transfixation screw hole relative to the thickened portion of the bridge portion shows the hole is not located "at the thickened portion of the bridge portion." Substantial evidence, therefore, cannot support the Board's anticipation determination. *Id.*; *see also Apple Inc. v. Samsung Elecs. Co.*, 839 F.3d 1034, 1067 (Fed. Cir. 2016) (en banc) (Prost, J. dissenting) ("Substantial evidence may be a lenient standard, but it is a standard nonetheless that cannot be met with the stark absence of evidence.").

Additionally, Slater figures 1 and 7 are directed to distinct embodiments and thus the combined teachings cannot be used as anticipatory, as detailed in Cross-Appellant's opening brief. ECF No. 34 at 27-29; *see also Therasense, Inc. v. Becton, Dickinson & Co.*, 593 F.3d 1325, 1332 (Fed. Cir. 2010) (quoting *Lindemann Maschinenfabrik GMBH v. Am. Hoist & Derrick Co.*, 730 F.2d 1452, 1459 (Fed. Cir. 1984)) ("The requirement that the prior art elements themselves be 'arranged as in the claim' means that claims cannot be 'treated . . . as mere catalogs of separate parts, in disregard of the part-to-part relationships set forth in the claims and that give the claims their meaning.'"). Appellants' response does nothing to explain why the distinct teachings of Slater can be combined to arrive at the Cross-Appeal Claims in an anticipation theory. ECF No. 39 at 33-34.

In particular, Appellants point to (1) the heading which refers to the "DETAILED DESCRIPTION OF *THE* PREFERRED EMBODIMENT," and (2)

13

reference to the screw orientation of figure 1. *Id.* at 33 (emphasis in original). The text of the heading fails to establish Slater describes a single embodiment when the descriptions of figures 1 and 2 are compared to that of figure 5. Appx2502-2504 at 11:1-2 (Fig. 1), 11:5 (Fig. 1), 11:32 (Fig. 1), 12:14-16 (Fig. 2), 13:5-6 (Fig. 5). The reference to screw orientation (Appx2505 at 14:1-3) at most confirms the bone plate depicted in figure 5 may be used for arthrodesis if the screws are oriented in a manner similar to figure 1. Nothing about this reference to the screw orientation of figure 1 suggests the preferred embodiment of figures 5-13 and the other embodiments in figures 1 and 2 could be combined into a single, operable plate. Therefore, these disparate embodiments cannot be combined to anticipate claims 1-7 of the '085 Patent. *Therasense*, 593 F.3d at 1332.

Finally, contrary to Appellants' argument (ECF No. 39 at 60), Cross-Appellant did present this argument to the Board. *See* Appx8124-8126. For example, Cross-Appellant argued below that a transfixation screw hole "***near*** the thickened portion of the bridge portion, but not part of the thickened portion of the bridge portion" was insufficient as "there is no guarantee that the trajectory of the screw hole would cross the neutral bending axis of the joint." Appx8125 (emphasis in original). Similarly, Cross-Appellant argued "the Board should not interpret 'a transfixation screw hole disposed along the spine ***at*** the thickened portion of the bridge portion' as '***near*** the thickened portion of the bridge portion.'" *Id.* (emphasis

in original). Nevertheless, the Board found Slater's plate, which includes a thickened area at one end of the bridge portion and a transfixation screw hole *adjacent to* the other end of the bridge portion, anticipated the claimed "transfixation screw hole . . . at the thickened portion of the bridge portion." Appx210. Because this finding is inconsistent with the plain language of claim 1 of the '085 Patent, it must be reversed. *In re Smith Int'l, Inc.*, 871 F.3d 1375, 1384 (Fed. Cir. 2017) ("Because such findings depended on an incorrect claim construction, the Board's findings of anticipation are not supported by substantial evidence.").

## CONCLUSION

For the reasons detailed above, this Court should reverse the Board's decision relating to the Cross-Appeal Claims.

Dated: May 24, 2024        Respectfully submitted,

By:  */s/ Devon C. Beane*
Jason A. Engel
jason.engel@klgates.com
Devon C. Beane
devon.beane@klgates.com
Jonah Heemstra
jonah.heemstra@klgates.com
K&L GATES LLP
70 W. Madison Street, Suite 3100
Chicago, IL 60602
Telephone: (312) 807-4436
Facsimile: (312) 827-8000

*Attorneys for Cross-Appellant*

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 24, 2024, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system and therefore served on all counsel of record.

*/s/ Devon C. Beane*
Devon C. Beane

FORM 19. Certificate of Compliance with Type-Volume Limitations

Form 19
July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS</u>

**Case Number:**  2023-1925, -1926, -1928, -1929, -1979, -2010, -2011, -2012

**Short Case Caption:**  Stryker Corporation v. OsteoMed LLC

---

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

---

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

☑ the filing has been prepared using a proportionally-spaced typeface and includes 3,210 words.

☐ the filing has been prepared using a monospaced typeface and includes _____ lines of text.

☐ the filing contains _____ pages / _____ words / _____ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. _____).

Date: 05/24/2024                    Signature:  /s/ Devon C. Beane

                                    Name:  Devon C. Beane

Save for Filing